**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 22-cr-22 |
| : | |
| **JUSTICE EASTMAN** : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

From September 2020 and continuing until at least April 5, 2021, defendant Justice Eastman engaged in a conspiracy with her brother, Larry Eastman, to sell "jammers," which are fake oxycodone pills containing fentanyl. Her role was to accept and move the payments that he and others received from their fentanyl sales. For the reasons herein, the government requests that the Court impose a sentence of 37 months of incarceration.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are recounted in the Government's Sentencing Memorandum for co-defendant Larry Eastman, ECF No. 53, and the government incorporates by reference those facts.

The defendant's role in this case is limited to accepting and moving payments that others received for their drug sales. For example, for Diamond Lynch's April 2021 overdose death, Larry Eastman directed Diamond to send payment to the "$princesssjaee202" Cash App account. That account is registered to the defendant. Moreover, Cash App records show immediately preceding Diamond's November 2020 overdose that she sent $60 to the "Michelle24" Cash App account, which is also subscribed to the defendant. After the November 2020 overdose, Diamond's mother held onto Diamond's phone while Diamond was in the hospital, and she noted that the screen showed a Cash App notification from "Michelle24" requesting "$213 for Larry," further indicating the defendant's role in collecting payment for narcotics transactions for her co-conspirator brother.



Additional investigation shows nine payments to Michelle24 by Diamond Lynch between October 6, 2020, and November 19, 2020. The defendant's iCloud account was also searched, which had additional information linking the defendant to the acceptance and movement of drug money.

On January 18, 2022, a three-count indictment was returned against Larry and Justice Eastman charging them with conspiracy to distribute fentanyl (from September 2020 to at least April 5, 2021), distribution of fentanyl resulting in serious bodily injury (from on or about October 31, 2020, to November 1, 2020); and distribution of fentanyl resulting in death (April 5, 2021). On January 26, 2022, both Larry and Justice Eastman were arrested. The defendant was arrested at Raynolds Pl. Inside, investigators recovered eight fentanyl pills and several credit and debit

2

cards in the defendant's possession which are linked to the Cash App accounts.

 

On January 30, 2023, the defendant pled guilty to Count One of the Indictment pursuant to a plea agreement.

## II.     ARGUMENT

"The Court must begin the sentencing process by correctly calculating the applicable range under the U.S. Sentencing Guidelines." *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 184 (D.D.C. 2018). "Throughout this Guidelines calculation process, the Court is not confined to the jury's factual findings or even to the trial record. Rather, the Court may consider all of a defendant's 'relevant conduct.'" *Id*. at 185. "Relevant conduct need only be established by a preponderance of the evidence. *Id.* (citing *United States v. Bell*, 795 F.3d 88, 103 (D.C. Cir. 2015)).

The government believes that the defendant is at base offense level 22 pursuant to U.S.S.G. § 2D1.1(c)(9), and with the three-point acceptance of responsibility pursuant to U.S.S.G.§ 3E1.1 and (b), is a total offense level of 19.  Probation agrees, but also gave the defendant, as well as co-

defendant Larry Eastman, a +2 enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12). For the reasons stated in the Government's Response to the Presentence Report, the government is not asking for the application of this enhancement and does not believe it applies in this case.

## IV.  SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

### 1.  The Nature, Circumstances, and Seriousness of the Offense

The defendant aided and abetted a serious drug trafficking offense by repeatedly collecting and moving payments received from fentanyl sales. While the defendant's actions are serious, and undoubtedly contributed to the tragedy that is Diamond's death, the government believes the defendant's role was limited to managing and assisting with the financial transactions at issue. For example, the Lyft driver that dropped Diamond Lynch off at Raynolds Pl on the night of April 5, 2021, stated to investigators that Diamond met with a male at the location, meaning that the defendant was not the person who physically distributed the drug to Diamond. Moreover, one of

4

the victim's friends who had accompanied the victim to a prior drug sale at Raynolds Pl told investigators that a female delivered the narcotics in that particular transaction to the victim. However, when shown a photo array that included a photo of the defendant, the friend selected a photo of another female.

### 2. The Defendant's History and Characteristics

The defendant has a serious criminal history. She has been convicted of multiple prior felonies. Her role in these felonies, which are conspiracy to commit armed robbery, was to lure hapless victims to sites where they would be assaulted and robbed. In some ways, the defendant appears to have continued her supporting cast role in felony offenses by lending support in some way to the primary offender(s). While her conduct in this case is admittedly more passive than her past conduct of actively luring victims, the fact is that the defendant has not entirely divorced herself from criminality.

### 3. The Need to Promote Respect for the Law and Deterrence

Given the catastrophic impact of drugs on our community, the government's recommended sentence in this case is warranted. Individuals who engage in this type of behavior must understand that their conduct is unacceptable.

### 4. Other factors

The government's recommended sentence is also justified to protect the public from the defendant. It would also give the defendant ample time to pursue further educational and vocational training and participate in other programs that will hopefully prevent her from reoffending.

## V. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendant to 37 months of incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By: */s/ Andy Wang*
Andy T. Wang
Assistant United States Attorney
DC Bar No. 1034325
601 D Street, NW
Washington, DC 20530
(202) 870-4940
Andy.wang@usdoj.gov